No. 11-17255

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

KRISTIN PERRY, et al.,
*Plaintiffs-Appellees*,

v.

EDMUND G. BROWN, Jr. et al.,
*Defendants*,

and

DENNIS HOLLINGSWORTH, et al.,
*Defendant-Intervenors-Appellants*.

Appeal from United States District Court for the Northern District of California
Civil Case No. 09-CV-2292 JW (Honorable James Ware)

**APPELLANTS' REPLY IN SUPPORT OF EMERGENCY MOTION
FOR STAY PENDING APPEAL**

Andrew P. Pugno
LAW OFFICES OF ANDREW P. PUGNO
101 Parkshore Drive, Suite 100
Folsom, California 95630
(916) 608-3065; (916) 608-3066 Fax

Brian W. Raum
James A. Campbell
ALLIANCE DEFENSE FUND
15100 North 90th Street
Scottsdale, Arizona 85260
(480) 444-0020; (480) 444-0028 Fax

Charles J. Cooper
David H. Thompson
Howard C. Nielson, Jr.
Peter A. Patterson
COOPER AND KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036
(202) 220-9600; (202) 220-9601 Fax

*Attorneys for Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................v

I.  PROPONENTS' APPEAL IS LIKELY TO SUCCEED. ..............................1

    A.  The district court's order is contrary to law. ..........................................1

    B.  The common-law right of access does not apply. ..................................5

    C.  Even if the common-law right of access applied, it would not warrant unsealing the trial recording. ....................................................8

    D.  The First Amendment right of access does not apply. ........................11

II.  PROPONENTS FACE IRREPERABLE HARM ABSENT A STAY. ........12

III.  A STAY WILL NOT HARM PLAINTIFFS. ..............................................18

IV.  THE PUBLIC INTEREST WEIGHS IN FAVOR OF A STAY. ................18

CONCLUSION ...............................................................................................20

EXHIBITS[*]

    Exhibit 1 – Order Granting Plaintiffs' Motion to Unseal Digital Recording of Trial; Granting Limited Stay (Sept. 19, 2011)

    Exhibit 2 – Report of the Proceedings of the Judicial Conference of the United States (Sept. 17, 1996)

    Exhibit 3 – Letter from James C. Duff, Secretary of the Judicial Conference of the United States, to Senators Patrick J. Leahy and Jeff Sessions (July 23, 2009)

---

[*] Exhibits 1-36 were filed with Appellants' Emergency Motion for Stay Pending Appeal; exhibits 37-48 are being filed with this Reply supporting the Motion.

i

Exhibit 4 – Report of the Proceedings of the Judicial Conference of the United States (Sept. 20, 1994)

Exhibit 5 – Letter from Chief Judge Hug (June 21, 1996)

Exhibit 6 – Local Rule 77-3 (Sept. 8, 2011)

Exhibit 7 –Trial Transcript (Jan. 14, 2010)

Exhibit 8 –Trial Transcript (Jan. 16, 2010)

Exhibit 9 – Letter from Charles J. Cooper (Jan. 14, 2010)

Exhibit 10 – Notice to Parties (Jan. 15, 2010)

Exhibit 11 – Order (May 31, 2010)

Exhibit 12 – Amended Protective Order

Exhibit 13 – Notice to Court Clerk re Plaintiffs' Request for a Copy of the Trial Recording (June 2, 2010)

Exhibit 14 –Trial Transcript (June 16, 2010)

Exhibit 15 – Notice to Court Clerk from Plaintiff-Intervenor City and County of San Francisco re Use of Video (June 2, 2010)

Exhibit 16 – Order (June 9, 2010)

Exhibit 17 – Excerpts from Findings of Fact and Conclusions of Law (Aug. 4, 2010)

Exhibit 18 – Petition for a Writ of Certiorari, *Hollingsworth v. United States Dist. Ct.* (U.S. Apr. 8, 2010)

Exhibit 19 – Order, *Hollingsworth v. United States Dist. Ct.* (U.S. Oct. 4, 2010)

Exhibit 20 – Letter from Vaughn R. Walker to Ninth Circuit Court of Appeals Clerk (Apr. 14, 2011)

Exhibit 21 – Order Denying Motion for Order Compelling Return of Trial Recordings (June 14, 2011)

Exhibit 22 – Letter from Law Offices of Ephraim Margolin to Judge Ware (May 12, 2011)

Exhibit 23 – Hearing Transcript (Aug. 29, 2011)

Exhibit 24 – Order 2010-3 (9th Cir. Judicial Council Jan. 15, 2010) (Kozinski, C.J.)

Exhibit 25 – Report of the Proceedings of the Judicial Conference of the United States (Sept. 14, 2010)

Exhibit 26 – Letter from Charles J. Cooper to Chief Judge Walker (Dec. 28, 2009)

Exhibit 27 – Exhibits Supporting Proponents' Motion for Protective Order (Sept. 15, 2009)

Exhibit 28 – Declaration of Ronald Prentice (Sept. 15, 2009)

Exhibit 29 – Declaration of Frank Schubert (Sept. 15, 2009)

Exhibit 30 – Declaration of Nicole Moss (Sept. 15, 2009)

Exhibit 31 – Declaration of Hak-Shing William Tam (Sept. 15, 2009)

Exhibit 32 – Declaration of Sarah Troupis (Sept. 15, 2009)

Exhibit 33 –Trial Transcript (Jan. 15, 2010)

Exhibit 34 –Trial Transcript (Jan. 11, 2010)

Exhibit 35 – Judicial Conference Committee on Court Administration and Case Management, Guidelines for the Cameras Pilot Project in the District Courts

Exhibit 36 – Reply Brief for Appellant, *Citizens United v. FEC,* 2009 WL 693638 (U.S. 2009) (No. 08-205)

Exhibit 37 – Letter from Cathy A. Catterson, Circuit and Court of Appeals Executive, to Honorable John R. Tunheim (May 7, 2009)

Exhibit 38 – Public Information Office Press Release: Ninth Circuit Judicial Council Approves Experimental Use of Cameras in District Courts

Exhibit 39 – Letter from Thomas R. Burke to Vaughn R. Walker (Dec. 21, 2009)

Exhibit 40 – Letter from Thomas R. Burke to Vaughn R. Walker (May 18, 2010)

Exhibit 41 – The Price of Prop 8 (DIX458)

Exhibit 42 – Scuffles Over Gay-Marriage Ballot Measure Lead to Injuries, Arrest (DIX1725)

Exhibit 43 – Vandals Hit Prop 8 Supporters (DIX1792)

Exhibit 44 – Disclosure, Magnified on the Web (DIX2525)

Exhibit 45 – A Life Thrown into Turmoil by $100 Donation for Prop 8 (DIX2528)

Exhibit 46 – L.A. College is Sued over Speech on Gay Marriage; Student Opposed to the Unions Says Teacher Reacted Improperly (DIX2533)

Exhibit 47 – What Happens if You're on Gay Rights' 'Ememies List' (DIX2531)

Exhibit 48 – Hearing Transcript (Aug. 29, 2011)

# TABLE OF AUTHORITIES

**Cases**                                                                                         **Page**

*Artukovic v. Rison*, 784 F.2d 1354 (9th Cir. 1986)..................................................13

*CBS, Inc. v. United States District Court*, 765 F.2d 823 (9th Cir. 1985) .................5

*Estes v. Texas*, 381 U.S. 532 (1965) ........................................................................12

*Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003)................19

*Hollingsworth v. Perry*, 130 S. Ct. 705 (2010)................................................ *passim*

*In re Providence Journal Co.*, 293 F.3d 1 (1st Cir. 2002)....................................6, 11

*In re Roman Catholic Archbishop*,
    No. 10-35206, 2011 WL 4375678 (9th Cir. Sept. 21, 2011)...............................6

*In re Sony BMG Music Entm't*, 564 F.3d 1 (1st Cir. 2009)................................3, 12

*John Doe Agency v. John Doe Corp.*, 488 U.S. 1306 (1989).................................13

*Nixon v. Warner Commc'n, Inc.*, 435 U.S. 589 (1978) .......................................9, 11

*Phillips ex rel. Estates of Byrd v. General Motors Corp.*,
    307 F.3d 1206 (9th Cir. 2002) ........................................................... 10

*Rice v. Kempker*, 374 F.3d 675 (8th Cir. 2004) ......................................................12

*Times Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir. 1989).....................5, 8

*United States v. Antar*, 38 F.3d 1348 (3d Cir. 1994) ............................................. 11

*United States v. Anzalone*, 886 F.2d 229 (9th Cir. 1989) ......................................10

*United States v. McDougal*, 103 F.3d 651 (8th Cir. 1996)................................7, 11

*United States v. Schlette*, 842 F.2d  1574 (9th Cir. 1988) ......................................10

*United States v. Wunsch*, 84 F.3d 1110 (9th Cir. 1996) ...........................................2

*Valley Broad. Co. v. United States District Court*,
    798 F.2d 1289 (9th Cir. 1986) .................................................................7, 8, 11

*Westmoreland v. Columbia Broad. Sys.*, 752 F.2d 16 (2d Cir. 1984) ....................12

**Other**

28 U.S.C. § 2071........................................................................................................6

*Considering the Role of Judges Under the Constitution of the United States: Hearing Before the Senate Judiciary Committee* at 131:32 (2011), *available at* http://www.senate.gov/fplayers/jw57/urlMP4Player.cfm?fn=judiciary100511&st=1170&dur=9752 ...........................................................................17

Sandhya Somashekhar, *Firm Defending Defense of Marriage Act Withdraws from Case*, Washington Post, April 25, 2011............................................................16

This case presents a simple question—may a district court, barred from publicly broadcasting a trial by binding rule, well-established judicial policy, and an express decision by the Supreme Court enforcing these authorities against it in this very case, nevertheless publicly broadcast that trial, simply by (1) video recording the trial on the court's express assurance that the recording will not be used for "purposes of public broadcasting or televising," Ex. 7 at 754:21-23, (2) placing the video recording in the record under seal while reaffirming that "the potential for public broadcast" has been "eliminated," Ex. 17 at 36, and (3) concluding a year later that the "common law right of access to judicial records" requires that the video recording be unsealed?  If the answer to that question is yes, then the proceedings in this case will have caused grave and lasting injury to the integrity and credibility of the federal judiciary.  The answer must therefore be no, and fortunately it plainly is, as demonstrated in our emergency stay application and explained more fully below.  This Court should stay the order unsealing the trial recording pending the disposition of Proponents' appeal.

## I.     PROPONENTS' APPEAL IS LIKELY TO SUCCEED.

### A.     The district court's order is contrary to law.

As we have demonstrated, *see* Stay Mot. 8-12, the ruling below violates Rule 77-3's prohibition on the public broadcast of trial proceedings outside the courthouse, the longstanding policies of the Judicial Conference and this Court's

Judicial Council against such broadcasts, and the Supreme Court's decision enforcing these authorities in this very case. Plaintiffs offer no serious response to our arguments that the ruling violates Rule 77-3 and the Supreme Court's decision, and they do not address the judicial policies at all.[1]

1.       Plaintiffs simply parrot the district court's conclusory assertions, which we have already refuted, that "Rule 77-3 speaks only to the *creation* of digital recordings of judicial proceedings for particular purposes and uses," and does not "govern[] whether digital recordings may be placed into the record." Pls. Op. 16-17. But as Plaintiffs' counsel conceded below, the Rule's "plain language goes to broadcasting and televising *or* recording for the purpose broadcasting," Ex. 48 at 56:10-12, and nothing in the rule places any temporal limitation on the Rule's distinct prohibition on public broadcasting.[2] Nor is there any dispute that

---

[1] Citing a nonbinding resolution approved at a Ninth Circuit Judicial Conference in 2007, *see* Ex. 37, and the *dissenting* opinion in *Hollingsworth*, the Media Coalition argues that the public broadcast of this trial did not violate the policy of the Judicial Conference or this Court. *See* MC Op. 14. But it was the 2009 pilot program, not the 2007 resolution, that purported to alter this Court's longstanding policy. *See* Ex. 38 (purporting to "amend[] a 1996 Ninth Circuit policy" prohibiting broadcast "of court proceedings in the district courts"). And as the *majority* in *Hollingsworth* made clear, the pilot program "was not adopted after notice and comment procedures," as is required by statute. 130 S.Ct. at 712.

[2] The Media Coalition argues that this Court should defer to the district court's interpretation of Rule 77-3. *See* MC Op. 13. But the very case it cites in support of this proposition declines to decide "the appropriate standard of review" in this context. *United States v. Wunsch*, 84 F.3d 1110, 1114 (9th Cir. 1996) (contrasting cases according deference to district courts' interpretations of local rules with cases that "review de novo the determination that counsel violated the local rules"). In

2

unsealing the video recording would immediately and inevitably result in its public broadcast outside the courthouse—indeed that is the avowed purpose of Plaintiffs' motion to unseal.  *See, e.g.*, Pls. Op. 3.  Further, placing the unsealed trial recording on the internet-accessible public docket would itself publicly broadcast the trial proceedings beyond the confines of the courthouse.

2.    Plaintiffs likewise merely repeat the district court's claim that the Supreme Court's prior decision in this case held only that Judge Walker's purported amendment of Rule 77-3 was procedurally invalid and "did not 'express any views on the propriety of broadcasting court proceedings generally.'"  Pls. Op. 17.  They simply ignore both our contrary arguments and the Supreme Court's clear holding that former Chief Judge Walker's attempt to broadcast the trial proceedings "complied *neither* with existing rules or policies *nor* the required procedures for amending them," as well as its conclusion that even "[i]f Local Rule 77-3 had been validly revised" to allow public broadcasting of trial proceedings pursuant to a pilot program, "*[t]his case* is … not a good one for a pilot program." *Hollingsworth v. Perry*, 130 S.Ct. 705, 713-14 (2010).[3]

_____

all events, where, as here, the district court's interpretation is contrary not only to the plain language of the local rule but also to the unequivocal judicial policies it was adopted to implement, *see* Stay Mot. 1-2, that interpretation surely cannot stand.  *See In re Sony BMG Music Entm't*, 564 F.3d 1, 7-8 (1st Cir. 2009).

[3] The Media Coalition claims that the Supreme Court addressed only "the possible *contemporaneous* broadcast of trial testimony."  MC Op. 16.  The Court, however, clearly held that Rule 77-3 prohibits "the streaming of transmissions, *or other*

3.     Plaintiffs' principal response to Rule 77-3, longstanding judicial policy, and the Supreme Court's decision in this case seems to be that Proponents somehow waived their right to rely upon these authorities by not objecting to Judge Walker's decision to place the trial recording in the record subject to seal.  *See* Pls. Op. 1, 5, 7.  But precisely (and only) because the recording was subject to seal, its placement in the record did not violate these authorities and Proponents had no reason to object.  Indeed, in the very same order sealing the record and placing it in the record, Judge Walker made clear that "the potential for public broadcast" had been "eliminated."  Ex. 17 at 36.

To the contrary, it is Plaintiffs and the Media Coalition (which was closely following the case, *see, e.g.*, Exs. 39-40), who should have objected to Judge Walker's action if they wished to publicly broadcast the recording.  Had they objected then that the video recording could not lawfully be placed in the record *under seal*, we of course would have objected to the recording being placed in the record at all, and would have taken the steps necessary to prevent it.  The propriety of Judge Walker's disposition of the trial recording could have been raised at that time, either by way of extraordinary writ proceedings or in connection with

---

*broadcasting or televising*, beyond 'the confines of the courthouse.'"  *Hollingsworth*, 130 S.Ct. at 711.  Surely the Media Coalition does not believe that the Supreme Court's decision left Judge Walker free to record the trial proceedings and publicly broadcast them immediately after the trial's conclusion.  *See* Rule 77-3 (prohibiting "public broadcasting or televising, *or recording for those purposes*").

4

Proponents' appeal of Judge Walker's ruling on the merits.  Instead, Plaintiffs and the Media Coalition waited until months after that appeal had been briefed and argued—indeed until Proponents challenged Judge Walker's improper disclosure of segments of the recording—to challenge Judge Walker's disposition of the recording.  Especially in light of their purported urgent desire to broadcast the trial proceedings, this long delay is simply inexplicable.

In all events, the lack of contemporaneous objection to Judge Walker's disposition of the trial recording by any party is of little consequence.  For as the authority cited by the Media Coalition makes clear, if the trial recording was not properly placed in the record subject to seal, this Court can and should determine that the recording was "unnecessary to consideration of [Plaintiffs' constitutional claims] on the merits, was surplusage, and … was improvidently filed" and thus direct that the recording "in its entirety should be removed from the record."  *CBS, Inc. v. United States District Court*, 765 F.2d 823, 825-26 (9th Cir. 1985) (Kennedy, J.); *cf.* Ex. 35 (directing that trial recordings made pursuant to the pilot program recently adopted by the Judicial Conference "are not the official record of the proceedings, and should not be used as exhibits or part of any court filing").

###### B.    The common-law right of access does not apply.

The threshold question whether the common-law right of access applies at all to the trial recording is a question of law requiring *de novo* review.  *See Times*

*Mirror Co. v. United States*, 873 F.2d 1210, 1212 (9th Cir. 1989).  As we have

demonstrated, *see* Stay Mot. 12-14, it does not.

  1.  It is well-settled that the common-law right of access must yield to

applicable enactments of positive law, *see* Stay Mot. 12-13; *In re Roman Catholic*

*Archbishop*, No. 10-35206, 2011 WL 4375678, at *9 (9th Cir. Sept. 21, 2011), and

Plaintiffs do not seriously contend otherwise.[4]  Because, as we have demonstrated,

Rule 77-3 prohibits public broadcast of the trial recording, the common-law right

of access simply does not apply.

  2.  As we have also demonstrated, the trial recording is simply not the

sort of judicial record to which the common-law right of access applies.  Neither

Plaintiffs, San Francisco, nor the Media Coalition have identified any authority

holding that the common-law right of access applies to a video recording of trial

proceedings or any similar record that is nothing more than an unofficial depiction

or account of the testimony and arguments made at trial.  As the Eighth Circuit

squarely held, even with respect to a recording submitted in lieu of live testimony

---

[4] The Media Coalition argues that local rules, unlike statutes or federal rules of procedure, cannot displace the common-law right of access. *See* MC Op. 14-15 & n.8.  But local rules (like regulations, federal rules of procedure, and other sources of positive law that plainly preempt the common law) are authorized by statute, *see* 28 U.S.C. § 2071, and have "the force of law," *Hollingsworth*, 130 S.Ct. at 711.  *In re Providence Journal Co.*, 293 F.3d 1 (1st Cir. 2002), cited by Media Coalition, held only that the common-law right of access trumped a district court's "longstanding *practice*." *Id*. at 6.  But that practice was not codified in, and in fact appeared to conflict with, "the court's local rules." *Id*.

at trial, so long as the public "had a right to hear and observe the testimony at the time and in the manner it was delivered in the courtroom," there is "no additional common law right to obtain … the electronic recording of that testimony." *United States v. McDougal*, 103 F.3d 651, 657 (8th Cir. 1996).

Plaintiffs' attempts to distinguish *McDougal* are unavailing.  The Eighth Circuit squarely held "*as a matter of law* that the videotape itself is not a judicial record to which the common law right of public access attaches." *Id*. at 656. Thus, contrary to Plaintiffs' suggestion, *see* Pls. Op. 12-13, the Eighth Circuit's holding in no way turned on the district court's reservation of this question.  Nor was this central holding in any way dependent on the court's alternative conclusion that, even if it "were to assume" the videotape were subject to the common-law right of access it "would hold that the district court did not abuse its discretion in denying access." *McDougal*, 103 F.3d at 657.[5]

Nor does this Court's decision in *Valley Broadcasting Company v. United States District Court*, 798 F.2d 1289 (9th Cir. 1986), contradict *McDougal*, let alone suggest that the trial recording in this case is subject to the common-law right of access.  *Valley Broadcasting* held that the common-law right of access

---

[5] The Media Coalition is likewise "incorrect to assume" that the Eighth Circuit's holding "turn[ed] on whether or not the videotape itself was admitted into evidence."  103 F.3d at 656.  As the court explained, it "conclude[d] for reasons unrelated to the fact that the videotape was never admitted into evidence, that the videotape itself [was] not a judicial record for purposes of this analysis." *Id*.

applied to recordings of "conversations occurring during the planning and commission of residential burglaries," *id*. at 1291, which were offered as exhibits in evidence during a criminal trial, *id*. at 1290. As *McDougal* itself makes clear, such recordings of "primary conduct," which themselves constitute evidence, are different in kind from mere "recording of witness testimony." 103 F.3d at 657.

More fundamentally, Plaintiffs are simply wrong that the common law right of access "applies to all judicial records." Pls. Op. 12. Far from "recognizing a common law right of access to all judicial and quasi-judicial documents," this Court has never "recognized a common law right of access to judicial records when there is neither a history of access nor an important public need justifying access." *Times Mirror*, 873 F.2d at 1219. There is, of course, no history of access to video recordings of federal trial proceedings. To the contrary, the recording or broadcast of such proceedings has traditionally been barred pursuant to the federal judiciary's considered judgment that the "negative effects of cameras in trial court proceedings far outweigh any potential benefit." Ex. 3 at 1. Nor is there "an important public need justifying access," where, as here, the trial itself was open to the public and the official transcript is available to all.

**C. Even if the common-law right of access applied, it would not warrant unsealing the trial recording.**

Determining whether records must be released pursuant to the common-law right of access requires "a sensitive appreciation of the circumstances that led to

8

their production." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 603 (1978).  Thus, contrary to Plaintiffs' contentions, the common-law right "does not permit copying upon demand.  Otherwise, there would exist a danger that the court would become a partner in the use of the [disputed records] to gratify private spite or promote public scandal … with no corresponding assurance of public benefit." *Id*.  These considerations plainly counsel against release of the trial recording here.

1.    The trial recording was created in the first place, over Proponents' objection, on the express assurance that it would not be used "for purposes of public broadcasting or televising."  Ex. 7 at 754:21-23.  But for this assurance, the recording would have violated both Rule 77-3 and the Supreme Court's order enforcing it.  Indeed, Judge Walker himself subsequently found that the "potential for public broadcast … had been eliminated." Ex. 17 at 36. In keeping with this finding, Judge Walker specifically "directed," on his own initiative, that the recording be subject to a highly restrictive protective order and filed under seal. *See* Ex. 11 at 2; Ex. 12 at 8; Ex. 17 at 4.  But for these actions, the release of the trial recording to Plaintiffs and San Francisco and its placement in the record would have violated Rule 77-3, and Proponents would have taken immediate steps to prevent it.  The circumstances surrounding the creation of the trial recording and its placement in the record cannot be reconciled with granting Plaintiffs' motion

9

seeking public access.[6]

2.    The serious risk of harm to Proponents and their witnesses posed by public broadcast of the trial proceedings also weighs strongly against public access here.  *See* Stay Mot. 15-18; *infra* Part II.  Most notably, as the Supreme Court recognized, public broadcast of the trial proceedings would subject Proponents' witnesses to a well-substantiated risk of harassment.  *See Hollingsworth*, 130 S.Ct. at 713.  There is thus a grave risk that the trial recording will be used "to gratify private spite" and "promote public scandal." *Nixon*, 435 U.S. at 603.

3.    Further, unsealing the trial recording will provide "no corresponding assurance of public benefit."  *Id.*  As all concede, the trial in this case was open to the public and widely reported, and the official transcript has been broadly disseminated and remains readily available to all.  *See* Pls. Op. 2; SF Op. 4; MC

---

[6] In establishing common-law presumptions of confidentiality or access, this Court has shown sensitivity to the circumstances surrounding documents' creation, production, and placement in the record.  *See, e.g., Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002) (parties seeking access to documents filed under seal pursuant to a valid protective order in support of a nondispositive motion "must present sufficiently compelling reasons why the sealed discovery document should be released"; "[a]pplying a strong presumption of access to documents a court has already decided should be shielded from the public would surely undermine, and possibly eviscerate, the broad power of the district court to fashion protective orders"); *United States v. Anzalone*, 886 F.2d 229, 233 (9th Cir. 1989) ("When a court is called upon to release a presentence report, the court must balance the desire for confidentiality of the reports against the need for their disclosure, with a strong presumption in favor of confidentiality. The [party seeking access] must show a large compelling need for disclosure in order to meet the ends of justice."); *United States v. Schlette*, 842 F.2d  1574, 1581 (9th Cir. 1988) (presentence reports are "prepared primarily for court use").

Op. 10.  Even assuming any applicable common-law right of access requires more—and it does not—the already extensive public access to the trial in this case surely renders "the public's interest in gaining access to the videotape recording … only marginal"—at most.  *McDougal*, 103 F.3d at 658; *see also In re Providence Journal*, 293 F.3d at 17-18.[7]

### D.    The First Amendment right of access does not apply.

Plaintiffs' alternative argument, that the First Amendment requires public access to the trial recording, is foreclosed by binding precedent.  Indeed, even with respect to recordings offered as evidence of illegal conduct during criminal trials, both the Supreme Court and this Court have squarely held that the First Amendment is satisfied so long as the trial is open to the press and public and transcripts of the recordings as played at trial are publicly available.  *See Nixon*, 435 U.S. at 608-09; *Valley Broadcasting*, 798 F.2d at 1292-93; *see also, e.g., In re Providence Journal Co*., 293 F.3d at 16.  The same is true of recorded witness testimony offered at criminal trials, *see McDougal*, 103 F.3d at 659, and of live criminal proceedings generally, *see United States v. Antar*, 38 F.3d 1348, 1359-60

---

[7] The Media Coalition suggests that Proponents' motion to vacate Judge Walker's ruling somehow increases the need for public access to the trial recording.  *See* MC Op. 11-12.  But Proponents' argument that Judge Walker was disqualified from hearing the case is based primarily on his undisclosed, long-term, same-sex relationship—which was never discussed during the trial—and is not in any way based on his courtroom demeanor or conduct.  *See* Defendant-Intervenors-Appellants' Opening Brief, *Perry v. Brown*, No. 11-16577 (9th Cir. Oct. 3, 2011).

(3d Cir. 1994) (First Amendment requires access to "the live proceedings" and "the transcripts which document those proceedings").

More generally, it would follow from Plaintiffs' argument that the First Amendment requires the public broadcast of trial proceedings and that the longstanding prohibition of such broadcasts is unconstitutional.  But the Supreme Court has already rejected this argument by necessary implication in this very case when raised by Plaintiffs in opposition to our successful application for a stay of Judge Walker's initial broadcast order.  Response of Kristin M. Perry et al. to Application for Immediate Stay at 18-19, *Hollingsworth v. Perry*, 130 S.Ct. 705 (2010) (No. 09A648).  Other decisions by the Supreme Court and federal courts of appeals have uniformly and repeatedly rejected the same argument.[8]

## II.    PROPONENTS FACE IRREPERABLE HARM ABSENT A STAY.

1.    Unsealing the trial recording will release it into the public domain and

---

[8] *See, e.g., Estes v. Texas*, 381 U.S. 532, 539 (1965) (rejecting claim "that the freedoms granted in the First Amendment extend a right to the news media to televise from the courtroom"); *id*. at 584-85 (Warren, C.J., concurring) ("Nor does the exclusion of television cameras from the courtroom in anyway impinge upon the freedoms of speech and press."); *id*. at 588 (Harlan, J., concurring) ("No constitutional provision guarantees a right to televise trials."); *In re Sony BMG*, 564 F.3d at 9 ("the venerable right of members of the public to attend federal court proceedings is far removed from an imagined entitlement to view court proceedings remotely on a computer screen"); *Rice v. Kempker*, 374 F.3d 675, 679 (8th Cir. 2004) ("courts have universally found that restrictions on videotaping and cameras do not implicate the First Amendment guarantee of public access"); *Westmoreland v. Columbia Broad. Sys.*, 752 F.2d 16, 23 (2d Cir. 1984) ("There is a long leap, however, between a public right under the First Amendment to attend trials and a public right under the First Amendment to see a given trial televised.").

thus moot our appeal, which is by definition irreparable harm. *See* Stay Mot. 16; *see also John Doe Agency v. John Doe Corp*., 488 U.S. 1306, 1309 (1989) (Marshall, J., in chambers).  Plaintiffs concede that "mootness may constitute irreparable harm," though not, they say, when "the mooted appeal has no realistic likelihood of succeeding on the merits."  Pls. Op. 18-19.  Thus, Plaintiffs rely exclusively on their arguments against our likelihood of success on the merits, and effectively concede that we will suffer irreparable harm absent a stay.[9]

2.    Emphasizing that neither of Proponents' trial witnesses has presented a declaration "that they have faced any harassment as a result of their involvement in this trial," Pl. Op. 9, Plaintiffs argue that we offer nothing but "unsubstantiated and speculative allegations" in support of our claim that unsealing, and therefore broadcasting, the trial recording would place our witnesses at grave risk of harassment and prejudice any future trial proceedings that may prove necessary in this case.  Pl. Op. 18.[10]  This is precisely the same argument made by Plaintiffs to

---

[9] The Media Coalition notes that a stay did not issue in *Artukovic v. Rison*, 784 F.2d 1354 (9th Cir. 1986), but, as the Coalition appears to recognize, MC Op. 18, that is because the movant failed to establish a likelihood of success on the merits, not because mootness did not constitute irreparable injury.  *Artukovic*, 784 F.2d at 1356.  Furthermore, because the irreparable injury in that case was *certain* absent a stay, *Artukovic*'s analysis did not turn in any way on whether a party must demonstrate a likelihood or a mere possibility of irreparable harm.

[10] Plaintiffs also dismiss these concerns as "illogical" because "[t]he involvement of Proponents' witnesses in this case has been known and widely reported for years, yet Proponents do not even suggest that they have faced harassment or other harm as a result."  Pl. Op. 10; *see also* MC Op. 16 ("[T]he Court's concerns were about a

the Supreme Court in opposing our motion to stay Judge Walker's original

decision to broadcast the trial beyond the courthouse.  *See* Response of Kristin M.

Perry et al. to Application for Immediate Stay, *supra*, at 14.  The Supreme Court,

however, granted our motion, concluding that Proponents had "demonstrated the

threat of harm they face if the trial is broadcast" and, more specifically, had

"substantiated their concerns by citing incidents of past harassment" of Proposition

8 supporters.  130 S.Ct. at 713.[11]  Neither Plaintiffs nor their allies offer any

substantial reason that would justify revisiting the Supreme Court's conclusion, so

that is the end of the matter.[12]  But given Plaintiffs' insistence on reasserting this

---

trial that had not yet occurred and witnesses who had not yet testified.  But this
case already has been tried and those concerns have been proven unfounded.
Neither of Proponents' two expert witnesses has offered any testimony to suggest
that the potential harm occurred").  It is evident that Plaintiffs and their allies have
simply missed the point of our argument.  Our position, in the words of the
Supreme Court, is that our witnesses will be "subject to harassment *as a result* of
broadcast of their testimony."  *Hollingsworth*, 130 S.Ct. at 713.  The trial in this
case has not been broadcast, and the purpose of the instant stay request—indeed,
the purpose of the stay previously issued by the Supreme Court in this case, and of
the court rules and judicial policies that it enforced—is to *prevent* the harm that
will surely result *if* the trial is broadcast.  Any harassment or other harm that has
already been suffered by our witnesses or other trial participants is obviously not
something that we, or this Court, can prevent.

[11] The Supreme Court also rejected the argument, offered again by Plaintiffs and
their allies, *see* Pls. Op. 8, 9; MC Op. 1, that concerns about witness harassment
are "diminished by the fact that some of [Proponents'] witnesses are compensated
expert witnesses."  130 S.Ct. at 713.  As the Court explained, "[t]here are
qualitative differences between making public appearances regarding an issue and
having one's testimony broadcast throughout the country."  *Id.*

[12] Contrary to Plaintiffs' argument, *see* Pls. Op. 18, Judge Walker's refusal to
credit our explanation that several of our witness refused to testify with any sort of

argument, we briefly outline again the legal and evidentiary foundations of the harm threatened if the trial recording is broadcast.

First, the very *existence* of Rule 77-3 refutes Plaintiffs' argument, for the rule's *sole purpose* is to prevent the harms that would be threatened in any case in which "public broadcasting or televising" of trial proceedings was permitted. And the local rule is, in turn, based upon the Judicial Conference's long-standing "opposition to the use of cameras in the federal trial court proceedings," a policy that is rooted in "decades of experience and study" demonstrating that the public broadcast of trial proceedings "can intimidate litigants [and] witnesses," "create privacy concerns," and "increase[] security and safety issues." *E.g.*, Ex. 3 at 1-3; *see also Hollingsworth*, 130 S.Ct. at 712-13. Significantly, the Judicial Conference's policy is based on studies of garden-variety federal cases, not "high profile, divisive" cases such as this one involving "issues subject to intense debate

---

recording rested on his conclusion that "the potential for public broadcast in the case had been eliminated." Ex. 17 at 36. Contrary to the Media Coalition's argument, *see* MC Op. 2, this Court's order transferring the motion to unseal to the district court said nothing about a need for additional fact finding. And contrary to San Francisco's argument, *see* SF Op. 11-12, Proponents had no reason to develop further evidence at trial supporting their concerns of witness harassment because the Supreme Court had already determined that these concerns were well founded and stayed public broadcast of the case, and because the possibility that the trial recording would ever be publicly disclosed had been eliminated, we believed, by Judge Walker's unequivocal assurances to that effect. Nevertheless, Proponents did introduce additional evidence of harassment of Proposition 8 supporters generally in connection with other issues during the trial. *See, e.g.*, Exs. 41-47; DIX2544; DIX2616.

in our society," where the harms threatened by public broadcasting would inevitably be greatly magnified. *Id.* at 714.

Second, quite apart from the fact that the likelihood of harm from broadcasting federal trials must be presumed under Rule 77-3 as a matter of law, the evidentiary record in this case amply establishes the likelihood of irreparable harm to Proponents from witness harassment and intimidation. *See* Stay Mot. 17. As the Supreme Court noted, "incidents of past harassment" of Proposition 8 supporters range from "death threats" and "physical violence" to retaliatory boycotts, forced resignations, and other forms of economic harassment. *Hollingsworth* 130 S.Ct. at 707. Indeed, even Plaintiffs' lead counsel has decried, on behalf of a different client, the "widespread economic reprisals" against supporters of Proposition 8. Ex. 36 at 28-29 (*cited in Hollingsworth*, 130 S.Ct. at 707). The record supporting the Supreme Court's finding of irreparable harm has only strengthened since the Court stayed the broadcast of the trial.[13]

---

[13] Indeed, a recent incident provides a chilling supplement to the record of economic reprisals directed against defenders of the traditional definition of marriage. In April a highly respected national law firm, King & Spalding, withdrew from its representation of the United States House of Representatives ("House") in several cases involving the constitutionality of the Defense of Marriage Act ("DOMA"). It has been widely reported that when the firm's representation of the House in defending DOMA was publicly announced, it "immediately came under assault from gay rights groups, including the Human Rights Campaign, which began contacting the firm's clients and urging students at top law schools to push the firm to drop the case." Sandhya Somashekhar, *Firm*

16

The risk of harm to Proponents' witnesses is illuminated by recent testimony to Congress by Justices Scalia and Breyer addressing the question of televising proceedings in the Supreme Court. Justice Scalia emphasized that only a tiny fraction of the public would sit through the Court's proceedings "gavel to gavel," while the rest "would see nothing but a 30 second take-out from one of the proceedings, which I guarantee you would not be representative of what we do." *Considering the Role of Judges Under the Constitution of the United States: Hearing Before the Senate Judiciary Committee* at 130:49, 131:32 (2011), *at* http://www.senate.gov/fplayers/jw57/urlMP4Player.cfm?fn=judiciary100511&st=1170&dur=9752. Justice Breyer echoed this concern: "[Y]ou can make people look good or you can make them look bad, depending on what 30 seconds you take." *Id.* at 135:05; *see also Nixon*, 435 U.S. at 601-02. These concerns apply with even greater force to video recordings of trial court proceedings in highly controversial federal cases, such as this one. Video recordings of such proceedings would present limitless opportunities for partisans to unfairly make one side look good and the other side look bad, and that alone is ample reason for the federal judiciary not to permit "the streaming of transmissions, or other broadcasting or televising, beyond 'the confines of the courthouse.'" *Hollingsworth*, 130 S.Ct. at 711 (quoting Rule 77-3).

---

*Defending Defense of Marriage Act Withdraws from Case*, Washington Post, April 25, 2011.

17

## III.    A STAY WILL NOT HARM PLAINTIFFS.

Plaintiffs have still not identified any harm that they will suffer if the trial recording remains sealed—let alone any harm that they will suffer during the pendency of the appeal.

## IV.    THE PUBLIC INTEREST WEIGHS IN FAVOR OF A STAY.

As we have demonstrated, the public's interest in the integrity and credibility of the federal judiciary will suffer grave and lasting harm if the order below is allowed to stand.  *See* Stay Mot. 19-20.  Given Rule 77-3, longstanding judicial policy, and the Supreme Court's decision requiring Judge Walker to comply with these authorities, the trial recording in this case could have never been created, provided to Plaintiffs and San Francisco, or placed in the record in the first place but for Judge Walker's solemn assurance that the recording would not be publicly broadcast outside the courthouse and his determination that the recording should be sealed and subject to a highly restrictive protective order.

Plaintiffs' sole response is that Proponents should not have relied on these judicial promises and determinations.  *See, e.g.*, Pls. Op. 11.  But they fail to identify any statement made or action taken by Judge Walker during the trial proceedings that called into question his assurance that the recording would not be publicly broadcast outside the courthouse.  True, Judge Walker allowed brief snippets of the recording to be played during closing arguments.  But he also

18

required Plaintiffs and San Francisco "to maintain as strictly confidential" their copies of the trial recording pursuant to a highly restrictive protective order, Ex. 11 at 2, and he denied the Media Coalition's request to publicly broadcast the closing arguments, Ex. 16.  Accordingly, as Plaintiffs themselves represented to the Supreme Court, "the trial [was] completed without any of the proceedings having been transmitted outside the confines of the courthouse in which they took place." Brief in Opposition for Kristin M. Perry et al. at 4, *Hollingsworth v. United States Dist. Ct. for the N.D. Cal.*, 131 S.Ct. 372 (2010) (No. 09-1238).  Nor did Judge Walker's statement that he wished to use the recording in chambers because he believed it "would be quite helpful to [him] in preparing the findings of fact," Ex. 7 at 754:15-19, suggest that it was any more likely that the recording would become part of the publicly accessible record in this case than other documents used in this way, such as the Judge's hand written notes or a bench memo from a law clerk.[14]

Nor does the public's purported interest in viewing the trial recording weigh against the stay.  The public has already had extensive access to the trial proceedings through the public and widely reported trial itself, as well as the readily available official transcript.  Further, as demonstrated above, Plaintiffs' assertion that First Amendment rights are at issue here is not even colorable.  *See*

---

[14] This case is not like *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003).  In that case, the protective order on which the insurance company unreasonably claimed to rely was *contrary* to law; here Judge Walker's decision to seal the recording and place it under a protective order was *required* by law.

19

*supra* Part I.D.  Accordingly, the authorities cited by Plaintiffs' in support of any

public interest in immediate, pre-appeal access to the trial recording are simply

inapposite.  In all events, the inexplicable, several month delay by Plaintiffs and

the Media Coalition in even moving to unseal the recording belies any claim that

they or the purported public interest in viewing the recording that they claim to

represent cannot await the orderly disposition of this appeal.

## CONCLUSION

This Court should stay the district court's order pending appeal.  Should the

Court disagree, Proponents request a seven-day stay to permit us to seek a stay

from the Supreme Court.


Dated:  October 13, 2011                    Respectfully submitted,

Andrew P. Pugno                            s/ Charles J. Cooper
LAW OFFICES OF ANDREW P. PUGNO             Charles J. Cooper
101 Parkshore Drive, Suite 100             David H. Thompson
Folsom, California 95630                   Howard C. Nielson, Jr.
(916) 608-3065; (916) 608-3066 Fax         Peter A. Patterson
                                           COOPER AND KIRK, PLLC
Brian W. Raum                              1523 New Hampshire Ave., N.W.
James A. Campbell                          Washington, D.C. 20036
ALLIANCE DEFENSE FUND                      (202) 220-9600; (202) 220-9601 Fax
15100 North 90th Street
Scottsdale, Arizona 85260
(480) 444-0020; (480) 444-0028 Fax

*Attorneys for Defendant-Intervenors-Appellants Hollingsworth, Knight,*
*Gutierrez, Jansson, and ProtectMarriage.com*

**CERTIFICATE OF COMPLIANCE PURSUANT TO 9TH CIRCUIT
RULE 32-2 FOR CASE NUMBER 11-17255**

This brief is accompanied by a motion for leave to file an oversize brief

pursuant to Circuit Rule 32-2 and is 5,588 words, excluding the portions exempted

by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable.


Dated:  October 13, 2011

<div style="margin-left:40%">

s/ Charles J. Cooper
Charles J. Cooper
Attorney for Appellants

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 13, 2011.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

<u>s/ Charles J. Cooper</u>
Charles J. Cooper